# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RANDY F. WRIGHT,**

    **Plaintiff,**

                          **Civil Action 2:18-cv-609**
                          **Judge Algenon L. Marbley**
**v.**                       **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Randy F. Wright ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Response in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20), and the administrative record (ECF No. 8). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I. BACKGROUND

Plaintiff protectively filed his application for supplemental security income on January 5, 2016. Plaintiff alleged a disability onset date of January 1, 2010. Plaintiff's application was denied initially on April 21, 2016, and upon reconsideration on July 26, 2016. Plaintiff sought

a hearing before an administrative law judge. Administrative Law Judge Rita S. Eppler (the "ALJ") held a hearing on March 2, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Richard P. Oestreich, Ph.D. (the "VE") and impartial medical expert Jonathan W. Nusbaum, M.D. (the "IME") also testified at the hearing. On June 15, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On April 21, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors (ECF No. 14), Plaintiff asserts that the ALJ's decision should be reversed because she failed to properly evaluate the mental health opinion evidence. More specifically, Plaintiff contends that the ALJ failed to address certain limitations opined by the state-agency reviewing psychologists and failed to properly evaluate the opinion of the consultative examiner.

## II.     RELEVANT MEDICAL EVIDENCE[1]

**A.     Consultative Examiner, Michele Evans, Ph.D.**

Consultative Examiner, Michele Evans, Ph.D., conducted a psychological evaluation of Plaintiff on March 31, 2016. (R. at 396.) Dr. Evans diagnosed Plaintiff with moderate major depressive disorder, agoraphobia, panic disorder, generalized anxiety disorder, posttraumatic stress disorder, and unspecified attention-deficit/hyperactivity disorder. (R. at 402-03.)

Dr. Evans completed a functional assessment for Plaintiff. Dr. Evans opined that

---

1 In his Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to his alleged physical impairments. Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged nonexertional impairments.

2

Plaintiff's "Agoraphobia, which includes having a fear of being in a crowd, could have a negative impact on his ability to respond to others in a work setting." (R. at 403.) She further found that Plaintiff's inability to trust others and paranoia due to his trauma history of being bullied "would be expected to have a negative impact on his ability to respond to coworkers and supervisors in a work setting." (R. at 403.) She found that Plaintiff's "ability to understand, remember, and follow instructions" was "expected to be compromised given his educational history, given his performance during a brief assessment of cognitive functioning that was part of this evaluation, and given that [she] had to ask him to please answer the question that [she] was asking multiple times." (*Id.* at 404.) Dr. Evans stated that she had to repeat at least 25 of her queries to Plaintiff during the evaluation. (*Id.*) She also opined that Plaintiff "is expected to experience difficulty in maintaining persistence given his decreased motivation," that his "ability to respond appropriately to work pressures in a work setting would be affected by his mental health symptomatology," and that "his mental health symptomatology coupled with decreased motivation makes it unlikely that he would always be able to deal with stress and pressures effectively." (R. at 404.)

**B.      State-Agency Reviewing Psychologists, Stanley Kravitz, Ph.D., and Joseph Edwards, Ph.D.**

On April 20, 2016, state-agency reviewing psychologist, Stanley Kravitz, Ph.D., reviewed the record and assessed Plaintiff's mental residual functional capacity ("RFC"). (R. at 68-70.) He found that Plaintiff is moderately limited in his ability to understand and remember detailed instructions and opined that Plaintiff can perform simple, routine, 1-2 step tasks, but requires support and explanation to understand and remember detailed instructions. (*Id.* at 68.)

With respect to sustained concentration and persistence, Dr. Kravitz found that Plaintiff is

moderately limited in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 69.) Dr. Kravitz opined that Plaintiff is limited to simple, routine, 1-2 step tasks without strict time or production quotas. (*Id.*) He further opined that Plaintiff requires support and explanation to carry out detailed instructions and to make simple work-related decisions. He also found that Plaintiff requires occasional flexibility with task, break, and shift changes and occasional supervision to maintain quality and productivity. (*Id.*)

With respect to social interactions, Dr. Kravitz found that Plaintiff is moderately limited in his ability to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. at 69.) Dr. Kravitz opined that Plaintiff is limited to occasional superficial contact with coworkers and supervisors and no contract with the general public. (R. at 69-70.) He further opined that Plaintiff requires a separate work area in a non-public setting with occasional routine contacts with the public, supervisors and coworkers. (R. at 70.)

Regarding his ability to adapt, Dr. Kravitz found that Plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting. (R. at 70.) He opined that Plaintiff is limited to static duties with infrequent changes that can be explained well in advance.

4

He further opined that Plaintiff can perform simple, routine, 1-2 step tasks, but requires support and explanation for change, especially for major changes. (R. at 70.)

On reconsideration, Joseph Edwards, Ph.D., assessed Plaintiff's mental RFC and adopted the findings of Dr. Kravitz. (R. at 83-85.)

### III. THE ADMINISTRATIVE DECISION

On June 15, 2017, the ALJ issued her decision. (R. at 11-22.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 5, 2016, the application date. (*Id.* at 13.) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease; impingement syndrome in his right shoulder; hypertension; major depressive disorder; generalized anxiety

---

[2.] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

disorder; agoraphobia; and panic disorder. (*Id.* at 13.)

At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-15.) At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he has the ability to understand, remember and follow simple and routine tasks, concentration, persistence and pace for simple routine tasks, interact occasionally with supervisors, co-workers and the public and is limited to low stress work defined as no strict production quotas or time pressures.

(R. at 15.) In assessing Plaintiff's mental RFC, the ALJ considered the mental health opinion evidence and assigned "partial" weight to the opinions of the state-agency reviewing psychologists, Drs. Kravitz and Edwards, and "partial" weight to the consultative psychologist, Dr. Evans. (R. at 17-18.)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 20-21.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 21.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

6

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As set forth above, in his Statement of Errors, Plaintiff asserts that the ALJ erred in considering the medical opinions related to his mental health impairments. Plaintiff first asserts that the ALJ failed to address the state-agency psychologists' opinions (1) limiting him to work that allows occasional flexibility in task, breaks, and shifts, and (2) limiting him to work where

7

he has occasional supervision by supervisors in order to maintain quality and productivity (the "omitted opinions").³ (Pl.'s Statement of Errors at 7-8, ECF No. 14.) Plaintiff contends that the ALJ's failure to include these limitations in the RFC or address them in her decision is not harmless error because they could be work preclusive. The Commissioner counters that the limitations imposed by the ALJ reasonably accounted for the state-agency psychologists' opinion that Plaintiff required occasional supervision to maintain quality and productivity. The Commissioner further contends that "while the ALJ did not expressly discuss every limitation indicated by Drs. Kravitz and Edwards, by affording their opinions only 'partial' weight, it is clear that the ALJ did not accept the psychologists' opinions in their entirety." (Def.'s Mem. in Opp. at 5, ECF No. 19.) Finally, the Commissioner contends that the ALJ's "discussion as whole supported her decision not to find further limits in the Plaintiff's mental functioning." (*Id.* at 6-7.) The undersigned disagrees with the Commissioner and finds that the ALJ's failure to address the omitted opinions requires remand. This finding obviates the need for the undersigned to consider Plaintiff's remaining contention of error related to Dr. Evans' opinions.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

---

3 The undersigned notes that the ALJ failed to specifically address other limitations contained in the state-agency psychologists' RFC assessment, as well. The undersigned's analysis, however, focuses only on the errors specifically raised by Plaintiff.

8

still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

"When the opinion comes from a physician who treated the claimant, the ALJ must 'give good reasons' in his written decision for the weight he assigns it." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544–45 (6th Cir.2004)). Although the "good reason" requirement does not apply where the medical source has not treated the claimant, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010), "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey*, 451 F. App'x at 519 (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995)).

Indeed, regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927(c). In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to a treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(c).

Here, the ALJ failed to address certain limitations opined by the state-agency psychologists, Drs. Kravitz and Edwards. As set forth above, Drs. Kravitz and Edwards found

9

that Plaintiff is moderately limited in his ability to sustain concentration, persistence, or pace, (R. at 64), and found that, in this area, Plaintiff is limited to 1-2 step tasks without strict time or production quotas; can perform simple 1-2 step tasks, but requires support and explanation to carry out detailed instructions and to make simple work-related decisions; and requires occasional flexibility with task, break and shift changes and occasional supervision to maintain quality and productivity (R. at 69). The ALJ agreed that Plaintiff is moderately limited in his ability to sustain concentration, persistence, or pace, (R. at 15), and assessed the following non-exertional limitations in the RFC: "he has the ability to understand, remember and follow simple and routine tasks, concentration, persistence and pace for simple routine tasks, interact occasionally with supervisors, co-workers and the public and is limited to low stress work defined as no strict production quotas or time pressures" (*id.*). In determining Plaintiff's RFC, the ALJ assigned "partial" weight to Drs. Kravitz and Edwards' opinions and "partial" weight to the Dr. Evans' opinions, explaining as follows:

> In forming this mental residual functional capacity, [ ] partial weight has been given to the State Agency psychologists (Exhibit B1A, B3A). They found that the claimant could perform simple and routine tasks and this is accepted as it is consistent with the record as a whole. However, the opinion regarding interaction with others is inconsistent and not fully accepted. For instance, they found that the claimant needed a separate work area in a non public setting with occasional routine contact with public, supervisors and coworkers but they also stated no contact with the general public (Exhibit B1A). Instead, limiting the claimant to occasional interaction with others is most consistent with the evidence. The claimant was able to attend doctor's appointments alone, take cabs and shop in stores. Further, throughout the record he was found to be generally cooperative and calm with providers in different settings. Finally, the State Agency psychologists found that the claimant needed support and explanation for change and support and explanation to make simple work-related instructions (Exhibit B1A/13, 14). These limitations are not supported by the evidence. The claimant was able to follow instructions throughout the record, was noted to be working on cars, and often had mild findings on examinations. Thus, a limitation to low stress work as defined above is most consistent with the evidence as a whole.

>The opinion of the consultative psychologist, Michele Evans, Ph.D. has been considered and assigned partial weight (Exhibit B4F). Dr. Evans found that the claimant reported that he was able [to] understand, remember and follow simple instructions and this is consistent with the evidence as a whole. Dr. Evans noted that the claimant's ability to understand, remember and follow instructions is compromised but this was following a discussion of complex instructions and the claimant has been limited to simple and routine tasks. As discussed above, throughout the record the claimant was able to interact with providers, set forth his medical history and perform daily tasks such as using the computer or repairing cars. Thus, the evidence supports a finding that he can perform simple and routine tasks. Next, Dr. Evans opined that the claimant would have decreased persistence given his motivation and would not always be able to deal with stress and pressures effectively, and this is consistent with a finding that the claimant needs to work in an environment with no strict production quotas or time pressures. Finally, Dr. Evans found that the claimant would have some "negative impact" from his symptoms on his ability to respond to others. While this is not stated in a vocationally relevant form, it is generally consistent with the finding that the claimant needs only occasional interaction with others.

(R. at 17-18.)

The undersigned finds that the ALJ erred in her consideration of Drs. Kravitz and Edwards' opinions. Indeed, despite the regulations requiring the ALJ to consider all of the medical opinions and explain the weight assigned to those opinions, the ALJ failed to mention, let alone explain her rationale for rejecting, Drs. Kravitz and Edwards' opinions limiting Plaintiff to (1) work that allows occasional flexibility in task, breaks, and shifts, and (2) work where he has occasional supervision by supervisors in order to maintain quality and productivity.

Here, the Commissioner does not dispute that the ALJ failed to discuss the omitted opinions in this case, but instead appears to argue that the ALJ's error was harmless. When an ALJ's decision satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned to a medical opinion is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (finding harmless

error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). In this case, the undersigned cannot conclude that ALJ's failure to address the omitted limitations was harmless error.

Contrary to the Commissioner's assertion, it is not "clear" that the ALJ did not accept the omitted limitations. (*See* Def.'s Mem. in Opp. at 5, ECF No. 19 (contending that "while the ALJ did not expressly discuss every limitation indicated by Drs. Kravitz and Edwards, by affording their opinions only 'partial' weight, it is clear that the ALJ did not accept the psychologists' opinions in their entirety" and pointing out that an ALJ is permitted to accept only portions of an opinion). Although the Commissioner is correct that the ALJ may adopt portions of a medical opinion without adopting all of it, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), the ALJ must still "say enough 'to allow the appellate court to trace the path of h[er] reasoning.'" *Stacey*, 451 F. App'x at 519 (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995)). Here, the ALJ assigned "partial" weight to the state-agency opinions, specifically accepting their opinion that Plaintiff could perform simple and routine tasks and specifically rejecting their opinions that Plaintiff (1) needed a separate work area in a non-public setting with occasional routine contact with the public, supervisors, and coworkers, and (2)

12

needed support and explanation for change and support and to make simple work-related instructions. (R. at 17.) She failed, however, to address the rest of the state-agency psychologists' opinions in any fashion. (*Id.*) Consequently, the undersigned cannot discern whether the ALJ rejected the state-agency opinions "for legitimate or illegitimate reasons or whether [s]he failed to consider [them] at all in assessing [Plaintiff's] residual functional capacity." *Stacey*, 451 F. App'x at 20; *see also Moore v. Colvin*, No. 2:14-CV-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015) (remanding where the Court was "left with an inability to discern whether the ALJ discounted portions of these three State agency consultants' opinions for valid or invalid reasons, or simply ignored them altogether").

The undersigned is also not persuaded that the ALJ's discussion of the evidence as a whole explains and/or supports the ALJ's rejection of the omitted opinions. In discussing Plaintiff's limitations in concentration, persistence, and pace, the ALJ considered that Plaintiff was able to "give a detailed history, is able to drive and shop and the record shows that he was able to work on cars occasionally." (R. at 15.) In another part of her decision, the ALJ considered that Plaintiff "was able to follow instructions throughout the record, was noted to be working on cars, and often had mild findings on examinations." (R. at 17.) The undersigned is not convinced that this evidence undermines the omitted limitations, particularly in light of evidence in the record that qualifies and/or detracts from the ALJ's findings. For example, although the ALJ noted that Plaintiff reported occasionally working on cars, the record contains no insight into the level of concentration and persistence Plaintiff sustained in doing so. Further, although Plaintiff testified that he drives about once every two weeks (R. at 39), his treatment records indicate that he had trouble driving to anywhere new and that he is afraid to

drive on highways. (*See, e.g.*, R. at 319 (noting that Plaintiff was "not happy the office is moving to a different location, states he will have to take the cab because he won't drive there"); R. at 323 (noting that Plaintiff took a cab to his appointment because he will not drive as far as the office); R. at 315 (noting that Plaintiff is afraid to drive on highways); *see also* R. at 304, 315, 319, 469, 481.) Additionally, the fact that Plaintiff drives and grocery shops with his mom once every two weeks (R. at 39) is not substantial evidence that he can maintain sustained competitive employment. *See Gabbard v. Comm'r of Soc. Sec.*, No. 3:11-cv-426, 2012 WL 5378747, at *14 (S.D. Ohio Oct. 30, 2012) ("[T]he ability to perform intermittent and interrupted daily functions such as driving, grocery shopping, or chores, is not evidence of an ability to perform substantial gainful activity." (citing *Walston v. Gardner*, 381 F.2d 586–87 (6th Cir. 1967)).

Further, mental status examinations revealed that his activity was slowed (R. at 449), his mood was anxious (449), and that he had impaired attention and concentration (R. at 450). His medications were noted to cause akathisia, palpitations, and jitteriness. (R. at 480, 484, 489, 490). Additionally, consultative examiner Dr. Evans' report contained the following findings regarding Plaintiff's concentration, persistence, and pace:

> The claimant reported that he has a problem with concentration. He was diagnosed with Unspecified Attention-Deficit/Hyperactivity Disorder. He has also been diagnosed with Major Depressive Disorder, Recurrent, Moderate, Generalized Anxiety Disorder, and Posttraumatic Stress Disorder; and difficulty concentrating is associated with these disorders. His speech was sometimes circumstantial. At least 25 of my queries had to be repeated for him during this evaluation. When asked about the pace at which he does things, the claimant said, "I try to do, to get stuff done quickly." He was slightly slow to somewhat slow to respond during a serial seven subtraction task. He was slightly slow to slow to respond to some arithmetic problems. The claimant reported that his persistence depends on what he is doing. He is expected to experience difficulty in maintaining persistence given his decreased motivation.

(R. at 404.)  Dr. Evans explained that Plaintiff's anxiety and depression have lowered his motivation.  (*Id.*)  Thus, the opinions of Dr. Evans—the only other medical source who opined on Plaintiff's mental health limitations—are not inconsistent with Drs. Kravitz and Edwards' opinions limiting Plaintiff to (1) work that allows occasional flexibility in task, breaks, and shifts, and (2) work where he has occasional supervision by supervisors in order to maintain quality and productivity.  Finally, Plaintiff's treatment records do not reveal any improvement in his conditions.  (*See, e.g.*, R. at 311 ("I don't believe [Plaintiff] will ever take responsibility for his life and change therefore we should consider a personality disorder diagnosis.  None of his issues will ever be fixed with medications, he needs counseling . . . .").  The treatment records also demonstrate that Plaintiff routinely sought mental health treatment and counseling for his issues, and that he was on a variety of medications, without much improvement.  (R. at 270-330, 444-93.)  Based on this record, the undersigned cannot conclude that the ALJ's failure to address the omitted opinions from Drs. Kravitz and Edwards was harmless error.

The undersigned is also not persuaded that the RFC accounts for the state-agency psychologists' opinion that Plaintiff required occasional supervision to maintain quality and productivity.  The Commissioner contends that by (1) finding that Plaintiff could interact occasionally with supervisors and (2) limiting Plaintiff to only simple routine tasks with no strict production quotas or time pressures, the ALJ reasonable accounted for Drs. Kravitz and Edwards' opinion that Plaintiff required occasional supervision to maintain quality and productivity.  The undersigned disagrees.  *Limiting* interaction with a supervisor to no more that 1/3 of the day is not the same as *requiring* supervision 1/3 of the day in order to maintain quality and productivity.  The former limitation relates to Plaintiff's difficulties in interacting

15

with others while the latter limitation addresses Plaintiff's difficulties maintaining concentration, persistence, or pace. Moreover, assuming *arguendo* that this limitation was accounted for in the RFC, the ALJ still failed to address Drs. Kravitz and Edwards' opinion that Plaintiff requires occasional flexibility in task, breaks, and shifts.

The undersigned concludes that the ALJ's failure to address the omitted limitations does not constitute harmless error. Indeed, "an error is harmless only if remanding the matter to the agency 'would be an idle and useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'" *Stacey*, 451 F. App'x at 520 (quoting *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x. 171, 173 (6th Cir.2004)). Here, it is not clear whether Plaintiff could perform work in the national economy if his abilities are as limited as opined by the state-agency psychologists. And further, "[r]emanding this case is not a mere formality, as it 'would propel [our Court] into the domain which Congress has set aside exclusively for the administrative agency,' if we were to determine the jobs available to [Plaintiff] based upon her limitations." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (citations omitted). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's statement of error be **SUSTAINED**.

## VI. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and

Recommendation.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

　/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE